### S04A0275. MICKENS v. THE STATE.
(593 SE2d 350)

HINES, Justice.

A jury found Carl Mickens guilty of two counts of felony murder, arson in the first degree, burglary, and terroristic threats in connection with the deaths of Roderick Green and his young son, Roderick Green, Jr. Mickens was sentenced for the felony murders and for terroristic threats. He appeals his convictions solely on the basis of the sufficiency of the evidence. Finding the evidence of Mickens's guilt sufficient to sustain the convictions, we affirm.[1]

When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). This Court does not reweigh evidence or resolve con-

---

[1] The terroristic threats occurred on January 4, 1998; the remaining crimes occurred on February 1, 1998. On September 27, 2001, a Dougherty County grand jury indicted Carl Mickens for the felony murder of Roderick Green while in the commission of arson in the first degree and/or burglary; the felony murder of Roderick Green, Jr. while in the commission of arson in the first degree and/or burglary; arson in the first degree; burglary; and terroristic threats. Mickens was tried before a jury July 8-12, 2002, and was found guilty of all charges. He was sentenced to consecutive terms of life imprisonment for the felony murders and a term of five years in prison, consecutive to the second life sentence, for terroristic threats. The arson and burglary counts merged for the purpose of sentencing. A notice of appeal to the Court of Appeals was filed August 5, 2002. On August 15, 2003, Mickens filed an amended notice of appeal to this Court. The appeal was docketed in this Court on October 17, 2003, and the case was submitted for decision on December 8, 2003.

flicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence. *Cimildoro v. State*, 259 Ga. 788 (387 SE2d 335) (1990).

*Dean v. State*, 273 Ga. 806-807 (546 SE2d 499) (2001).

The evidence construed in favor of the verdicts showed that Carl Mickens met Vickie Green in the fall of 1997, while they were both employed at a grocery store. Soon after beginning an intimate relationship, Mickens became violent toward Green. He would shove, pull, and bite her, and he also stole money from her. On more than one occasion, Mickens threatened to burn down Green's mobile home.

Green became pregnant with Mickens's child. She decided to terminate the pregnancy, and when she informed Mickens of her plans to do so, he threatened that he would "hurt [her] without touching [her]." After Green ended the pregnancy, Mickens continued to telephone her and to try to see her.

On January 4, 1998, Mickens went to Green's mobile home and took her glasses, identification card, and keys, and ran out the door. Mickens's cousin, Tommy Baisden, drove him to a store, where Mickens made a duplicate of Green's house key and purchased lighter fluid. When Baisden asked Mickens what he intended to do, Mickens responded that he "was going to burn Vickie up," and "That b_ _ _ _ must don't know who she f _ _ _ _ _ with. I will f_ _ _ her up." Baisden was able to dissuade Mickens from burning down the mobile home that day.

Green notified police of the theft but she did not pursue the prosecution of Mickens because she was afraid of him. Eventually, Green's mother persuaded Mickens to return the taken items; however, Mickens still had the duplicate house key.

During most of December 1997, and January 1998, Green did not stay in her mobile home because she was afraid of Mickens. However, Green's brother, Roderick Green, and his young son, Roderick Green, Jr., were sharing the mobile home with Green and still resided there. On January 31, 1998, Green was at her mobile home and around midnight she left to go to a club. She arrived at the club at approximately 1:30 a.m. and immediately saw her brother Roderick. Roderick left the club between 1:45 a.m. and 2:00 a.m., picked up his son from the babysitter, and returned to his sister's mobile home. At approximately 2:30 a.m., Green left the club with a cousin and traveled back to the mobile home park, where both women had homes. While dropping her cousin off at home, Green noticed that her own mobile home was on fire. Firefighters discovered the bodies of Green's brother and nephew inside Green's mobile home. They had died from heat and smoke inhalation.

Initially, investigators believed that the fire had occurred accidentally. Approximately a year later, authorities received information that the fire had been intentionally set, and further investigation revealed evidence of arson. Baisden made a statement to police about the fire. Baisden explained that he had not previously come forward to the police because he feared he would be accused of setting the fire. He stated that he drove Mickens to the home of Marie Dowell, a cousin of both Mickens and Baisden, on January 31, 1998. After staying at Dowell's house for some time that evening, Mickens asked Baisden to drive him to Green's house. Once there, Mickens entered the mobile home with the key he had previously copied, while Baisden fell asleep in the car. Baisden was awakened by the heat and noise coming from the mobile home, which was ablaze. He then picked up Mickens, who was standing near some mailboxes, and the two left the area.

Dowell confirmed that both men were at her house the evening before the fire occurred.

Mickens's longtime friend, Henry Arnold, Jr., also came forward with information about the fire. While Arnold was in police custody in early February 1998, Mickens came to visit him. During the visit, Mickens confided in Arnold that he had set the fatal fire by putting lighter fluid on the stove.

Mickens contends that the State's evidence was legally insufficient because the State's key witnesses Baisden and Arnold testified against him as a result of receiving benefits from the State for doing so; their testimony contained omissions and inconsistencies; testimony from the defense expert about the cause of the fire completely contradicted such testimony by the State's expert and there was no physical evidence linking him to the crimes; and the defense presented an alibi witness. But the contentions are unavailing.

The issue of any possible bias or motivation for Baisden and Arnold's testimony was fully explored before the jury. It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence. *Dean v. State*, supra; *Hampton v. State*, 272 Ga. 284, 285 (1) (527 SE2d 872) (2000). Even in the face of experts offering conflicting evidence regarding the cause of the fire, it is the province of the jury to decide which testimony is most believable. *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 398 (4) (306 SE2d 657) (1983). Likewise, the jury was authorized to disbelieve the alibi testimony and credit the testimony of the State's witnesses. *Woods v. State*, 275 Ga. 844 (1) (573 SE2d 394) (2002). The evidence was sufficient to enable a rational trier of fact to find Mickens guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 1, 2004.

*Ingrid D. Polite*, for appellant.

*Kenneth B. Hodges III, District Attorney, Gregory W. Edwards, Assistant District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.