## S11A1485. FARRIS v. THE STATE.
### (720 SE2d 604)

BENHAM, Justice.

Appellant Joe Lee Farris was convicted and sentenced for the malice murder and armed robbery of Olugbenga Ikuesan in Gwinnett County, as well as the aggravated assault of the victim with intent to rob, the aggravated assault of the victim by shooting him with a deadly weapon, and for being in possession of a firearm during the commission of a felony.[1]

The State presented evidence that the victim was found in his red tow truck on a Norcross road the morning of May 9, 2007, having died as a result of a gunshot wound to the center of the back of his head. A 9mm bullet was recovered from the victim's head, and a 9mm shell casing was found near the front tire on the driver's side of the victim's truck. A detective conducting a consent search of the Carrollton home where appellant was staying in May 2007 found a black bag containing a 9mm handgun wedged into an area under-

---

[1] The victim was killed the night of May 8-9, 2007. On August 1, 2007, a Gwinnett County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder with aggravated assault by shooting the victim as the predicate felony, felony murder with armed robbery as the predicate felony, armed robbery, two counts of aggravated assault (assault with intent to rob and assault with a deadly weapon (handgun)), and three counts of possession of a firearm during the commission of a felony. In a trial that commenced on August 31, 2009, and concluded on September 4, 2009, appellant was found guilty of all charges. On September 10, 2009, the trial court filed the sentences it imposed: life imprisonment for malice murder; terms of 20 years for armed robbery and each of the aggravated assault convictions, to be served concurrently with each other and consecutively to the sentence of life imprisonment; and a five-year term for possession of a firearm during the commission of a felony, to be served consecutively to the other sentences imposed. The felony murder convictions were vacated by operation of law, and the trial court merged the three firearm possession convictions. Appellant's motion for new trial, filed on September 14, 2009, was amended by new appellate counsel on January 7, 2011. The trial court held a hearing on the motion on January 7 and denied the motion the same day. A timely notice of appeal was filed on February 4, 2011, and the case was docketed in this Court to the September 2011 term. It was submitted for decision on the briefs.

neath the home's deck. The homeowner did not know of the existence of the gun and testified that appellant smoked cigarettes in the area underneath the deck. A firearms expert testified that the handgun recovered from the Carrollton home fired the bullet that was recovered from the victim, and a man acquainted with appellant testified that, the day before the victim was killed, appellant showed the witness a 9mm semi-automatic handgun stored in a black bag and told the witness that a man had employed appellant to kill the man. Also found in the Carrollton home among appellant's possessions was a wallet containing appellant's identification and a small amount of Nigerian currency.

In the tow truck with the victim were two cellular phones, and phone records revealed that appellant and the victim used their cellular phones to call one another several times from the early morning hours of May 7 through 12:35 a.m. on May 9. Appellant was identified as the man seen talking with the victim at 11:35 p.m. the night the victim was killed. Found in the tow truck with the victim was an undated bank deposit slip listing $850 cash and two checks, one for $50 and one for $90. The two checks listed on the deposit slip were found in the victim's truck, but the cash was not. The woman with whom the victim was living at the time of his death testified that, the day before he was killed, the victim had $1,000 he had withdrawn from a bank. The victim was found with his pants pockets turned inside out, and appellant, who was not known to have even $100, paid the Carrollton homeowner $300 in mid-May.

Appellant testified that he met the victim a few days before he was killed, that the victim had told him he wanted to die, and that the victim had given appellant a gun in a black bag. Appellant testified he returned the weapon to the victim before the victim was killed. Several people close to the victim testified he was in good health, was not depressed, and was days from departing on a long-awaited trip to Nigeria. An employee of a fast-food restaurant a mile from the crime scene testified appellant was in the restaurant from approximately 1:00 a.m. to 4:00 a.m. on May 9 and was not winded, upset, or disheveled when he arrived at the restaurant.

1. Appellant contends the evidence was not sufficient to authorize the jury to find him guilty beyond a reasonable doubt due to the lack of physical evidence linking him to the crime. The appellate court reviews the evidence " 'in the light most favorable to the verdict, giving deference to the jury's determination on the proper weight and credibility to be given the evidence.' [Cit.]" *Manuel v. State*, 289 Ga. 383 (1) (711 SE2d 676) (2011). It is for the jury "to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Mickens v. State*, 277 Ga. 627, 629 (593 SE2d 350) (2004). See also *Rucker v. State*, 268 Ga. 406 (1)

(489 SE2d 844) (1997). There was sufficient evidence to authorize a rational trier of fact to find appellant guilty of malice murder and armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). However, the conviction and sentence for aggravated assault with intent to rob must be vacated because it merges into the armed robbery conviction (*Lucky v. State*, 286 Ga. 478, 481-482 (689 SE2d 825) (2010)), and the conviction and sentence for aggravated assault by using a deadly weapon to shoot the victim must be vacated because it merges as a matter of fact into the malice murder conviction. See *Culpepper v. State*, 289 Ga. 736 (2) (a) (715 SE2d 155) (2011).

2. During the testimony of the investigation's lead officer, the State played before the jury a DVD of a 90-minute interrogation of appellant in which he made an inculpatory custodial statement. Appellant contends the statement should have been suppressed because it was not voluntarily given since the interrogating detective did not ensure that appellant understood his rights and did not determine whether appellant was impaired or laboring under a physical disability. At a hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368, 380 (84 SC 1774, 12 LE2d 908) (1964), one of the police officers who questioned appellant testified that appellant was advised of his rights and had no questions about them, that appellant did not request the presence of an attorney and agreed to answer questions, that appellant did not appear under the influence of drugs or alcohol, that he had a "normal conversation" with the officers, that he was not deprived of food, water, or access to restroom facilities, and that no threats or offers of benefit were made by the questioning officers. Appellant did not testify at the hearing, and his attorney noted the officer's failure to ascertain the educational status of the 41-year-old suspect or to inquire of appellant whether he was under the influence of alcohol or narcotics. The DVD of the interrogation was played for the trial court, and defense counsel pointed out that appellant became confused and asked that some questions be repeated. The DVD also revealed that appellant exercised his rights to remain silent and to terminate the questioning when he told the officers he no longer wished to talk with them.

At the conclusion of the hearing, the trial court, after employing the preponderance of the evidence standard and considering the totality of the circumstances, determined the statement was admissible, finding that appellant was advised of, understood, and voluntarily waived his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and thereafter gave his statement freely and voluntarily without any hope of benefit or fear of injury. See *Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008) ("The trial court determines the admissibility of a defendant's statement

under the preponderance of the evidence standard considering the totality of the circumstances."). "On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous . . . [and] independently apply the legal principles to the facts." Id. at 177. The trial court's findings of facts are not clearly erroneous, and the trial court did not err in refusing to suppress appellant's custodial statements.

3. Appellant asserts that trial counsel rendered ineffective assistance of counsel because she failed to secure an expert witness to narrow the time frame within which the medical examiner testified the victim died. The medical examiner estimated the time of death to be between 9:30 p.m. on May 8 and 1:30 a.m. on May 9. Telephone records reflected that the victim spoke with a dispatcher for the American Automobile Association (AAA) at 12:15 a.m. on May 9 about assisting a stranded motorist, and that the victim spoke with appellant at 12:35 a.m. The victim did not respond to phone calls made to him by AAA and the stranded motorist at 1:00 a.m. and afterward. An employee of a nearby fast-food restaurant identified appellant as the man who came into the restaurant sometime around 1:00 a.m. and was not flustered, nervous, acting bizarrely, or sweating profusely, and left shortly before 4:00 a.m.

> To prevail on his claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. . . . A court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." [Cit.]

(Citation and punctuation omitted.) Ford v. State, 290 Ga. 45, 47-48 (5) (717 SE2d 464) (2011). At the hearing on the motion for new trial, trial counsel testified that, based on her experience in trying at least twenty murder cases, she did not seek independent medical advice concerning the victim's time of death because it could not be pinpointed to a specific-enough time frame for it to be of use to the defense. Trial counsel stated she never had sought the testimony of an independent expert on time of death during her career, that time of death cannot be set at a particular moment in time, that she had talked for several hours with the medical examiner who had set time of death within a window of 4-5 hours, that she had no reason to

believe the medical examiner had not used all of her extensive knowledge and experience to come up with her estimation of the time of death, and that the best evidence of time of death in this case was the victim's cell phone records, which reflected that the victim was still alive at 12:15 a.m. and 12:35 a.m. on May 9 and was not answering his phone at 1:00 a.m. At the hearing on the motion for new trial, appellant presented no evidence to support his theory that an independent expert could have narrowed the time of death to a time frame shorter than that which the jury could deduce from the evidence presented. Since appellant did not overcome the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance, the trial court did not err when it concluded that appellant did not establish ineffective assistance of counsel. See *Ford v. State*, supra.

*Judgment affirmed in part, vacated in part, and case remanded with direction. All the Justices concur.*

DECIDED JANUARY 9, 2012.

*Brown & Gill, Angela B. Dillon*, for appellant.
*Daniel J. Porter, District Attorney, John A. Warr, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Dana E. Weinberger, Benjamin H. Pierman, Assistant Attorneys General*, for appellee.