304 Ga. 767
FINAL COPY

S18A1264.  RIVERA v. THE STATE.

HUNSTEIN, Justice.

Appellant Alejandro Rivera was tried and convicted of malice murder and related offenses in connection with the February 2008 shooting death of Mark Martin.[1]  Rivera appeals, alleging that the evidence was insufficient to support his convictions and that the trial court committed reversible error.  We affirm.

---

[1] On May 23, 2008, a Fulton County grand jury indicted Rivera, along with Adarrius George, Cheronne Manuel, and Antonius Robinson, for the shooting death of Martin.  Rivera was charged with malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), armed robbery (Count 3), aggravated assault (Count 4), possession of a firearm during the commission of a felony (Count 5), possession of cocaine (Count 6), and possession of MDMA (Count 8).

Rivera was tried alone from May 3-6, 2010.  After resting its case, the State nolle prossed the MDMA charge.  The jury then found Rivera guilty of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony, and acquitted him of the armed robbery and cocaine charges.  Rivera was sentenced to life imprisonment for malice murder and received a consecutive five-year sentence for the weapons charge.  The remaining counts were merged or vacated by operation of law.

Rivera filed a motion for new trial on May 10, 2010, which he later amended on June 4, 2015.  Following a hearing, the trial court denied the motion as amended on August 23, 2017.  Rivera timely filed a notice of appeal to this Court; the case was docketed to the August 2018 term and was thereafter submitted for a decision on the briefs.

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial shows that, on February 24, 2008, a group of people, including Rivera and Manuel, traveled to the apartment of George and Robinson to purchase drugs.[2]  Rivera and Manuel obtained money from their traveling companions and then headed into the apartment to complete the drug purchase. Rivera and Manuel were welcomed inside by Martin and George.  The men walked into Robinson's bedroom, and the group smoked marijuana.  At some point, Rivera approached George and asked if he could rob Martin.  George said no and then left the apartment to go to his girlfriend's residence.

Rivera returned to Robinson's bedroom where the two engaged in a quiet conversation; the men bumped fists, and then Robinson took a .38 caliber revolver from the top of his dresser and passed it over to Rivera.  Shortly thereafter, Rivera made his way into the living room where Martin was sitting on the couch.  Manuel heard Martin say "hold up hold up," after which he saw Rivera shoot Martin in the back as Martin was attempting to run away. George, who was still in the parking lot, heard a gunshot.  As he drove away, he saw Rivera and Manuel running out of his apartment.

---

[2] Manuel and George both testified for the State at Rivera's trial.

Rivera and Manuel shoved their way into the car with their waiting companions and drove away. Though the men did not mention a robbery or a shooting on the drive, when the group reached their final destination, Rivera handed each individual drugs, including cocaine, pills, and marijuana.

In the meantime, Robinson called George and stated that he had fled the apartment after Rivera had shot Martin. George picked Robinson up at a gas station and the two headed back to their apartment. There, they found Martin lying on the floor, unresponsive. The men moved the victim's body into a bedroom and got rid of a .32 caliber gun that was not involved in the shooting before calling police.

When officers responded, they located the victim's body under a mattress in a bedroom. Martin had suffered a gunshot wound to the back; he had cocaine, marijuana, and $310 in his pockets. Officers also located marijuana in the living room area, marijuana in George's pocket, and an unloaded .32 caliber gun outside the front entrance of the apartment. Officers swabbed Robinson's and George's hands, and testing later revealed the presence of trace amounts of gunshot residue. A GBI forensic analyst determined that the presence of such

3

a small amount of gunshot residue was consistent with the transfer of residue from Martin to Robinson and George as they moved the victim's body, and inconsistent with either of them being the shooter.

Robinson and George were arrested at the scene, and Manuel voluntarily turned himself in to the police shortly thereafter. All three men were interviewed by officers. Initially, the men lied about their knowledge of the shooting; however, all three eventually made incriminating statements and identified Rivera as the sole shooter.

During an autopsy, a bullet was recovered from the victim's body and turned over to the GBI for further analysis. The GBI firearms examiner concluded that the bullet did not come from the .32 caliber weapon recovered from the scene, and further determined that that bullet could only have been fired from a .38 special or a .357 magnum revolver.

After the shooting, Rivera went to his girlfriend's house, where he was visibly upset and crying; he told her that something had happened and that they needed to leave. She refused and asked him to leave. After this, Rivera headed to his estranged cousin's house. When Rivera arrived, he was not acting like himself. He washed some clothes and even spent the night, which he had never

done before. The next day, Rivera asked his cousin to drive him to a friend's house. The cousin agreed; when Rivera exited the vehicle, he asked his cousin to pray for his family and then walked in the opposite direction of his supposed final destination. Rivera later fled to Florida with his girlfriend, where he was eventually arrested.

1. Rivera alleges that the evidence presented at trial was insufficient to sustain his convictions because his convictions were based solely upon circumstantial evidence. We disagree.

It is well established that when this Court evaluates the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013). Moreover, a "reviewing court must consider all of the evidence admitted by the

5

trial court, regardless of whether that evidence was admitted erroneously." (Citations and punctuation omitted.) Kemp v. State, 303 Ga. 385, 388 (810 SE2d 515) (2018).

Contrary to Rivera's assertion, the record shows that the State presented both circumstantial and direct evidence at trial, as Rivera was identified as the shooter by two different witnesses, which is direct evidence of Rivera's guilt. See Nance v. State, 239 Ga. 381 (1) (236 SE2d 752) (1977). Reviewing all of the evidence presented at trial in a light most favorable to the jury's verdicts, we find that the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Rivera was guilty of the crimes for which he was convicted. See Jackson, supra.

Rivera also argues that, because the accomplice testimony of Manuel and George was not sufficiently corroborated, his convictions cannot stand. Once again, we disagree. Former OCGA § 24-4-8[3] required corroboration of accomplice testimony in felony cases "where the only witness is an accomplice."

---

[3] Because Rivera was tried prior to the enactment of the new Evidence Code, we review this case under the former applicable Code section; we note, however, that this provision has been carried over into Georgia's new Evidence Code. See OCGA § 24-14-8.

As we explained in Crawford v. State, 294 Ga. 898 (757 SE2d 102) (2014),

pursuant to former OCGA § 24-4-8,

> in felony cases in which the State relies on the testimony of an accomplice to the crimes, in order to justify submitting the case for the jury's determination, the State must present the testimony of at least one other witness or evidence of corroborating circumstances. The additional evidence that is required "may be circumstantial and it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged." It must, however, be independent of the accomplice's testimony and either directly connect the defendant with the crime or justify an inference that he is guilty. In addition, the independent evidence must corroborate both the identity of the defendant and the fact of his participation in the crime. In other words, corroboration of only the chronology and details of the crimes is not sufficient, and there must be some independent evidence tending to show that the defendant himself was a participant in the crimes. Once the State adduces such evidence, it is "peculiarly a matter for the jury to determine" whether the evidence sufficiently corroborates the accomplice's testimony and warrants a conviction.

(Citations and punctuation omitted.) Id. at 900-901. While slight evidence is

required, "[i]t is not necessary that the corroborating evidence correspond to the

accomplice's testimony in every particular." Benbow v. State, 288 Ga. 192, 194

(702 SE2d 180) (2010). Further, "[t]he corroborating evidence may be

testimony from another accomplice." Clark v. State, 296 Ga. 543, 547 (769

SE2d 376) (2015).

7

Here, Manuel's eyewitness accomplice testimony that Rivera shot the victim was sufficiently corroborated by George's accomplice testimony, the physical evidence found at the scene, the forensic evidence presented by the State's expert witnesses, the lay witness testimony concerning Rivera's odd behavior and statements after the shooting, and the evidence of Rivera's flight after the murder. Consequently, this portion of Rivera's claim also fails.

2. Next, Rivera argues that his right to confront witnesses under the Sixth Amendment was violated when the State elicited improper hearsay testimony from an investigating officer that non-testifying co-indictee Robinson identified Rivera as the shooter. Rivera failed to object to the testimony at trial and, therefore, failed to properly preserve this issue for appellate review. See Bailey v. State, 299 Ga. 807 (2) (792 SE2d 363) (2016) ("inasmuch as a plain error review would not apply to [Rivera's] trial in 2010, the allegation[ ] regarding the improper admission of evidence [is] waived in this appeal"); Durham v. State, 292 Ga. 239 (2) (734 SE2d 377) (2012).

Judgment affirmed. All the Justices concur.

Decided  December 10, 2018.

Murder. Fulton Superior Court. Before Judge Newkirk.

Nicholson, Silverbach & Watson, Edward V. C. Silverbach, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General,  Elizabeth H. Brock, Assistant Attorney General, for appellee.