**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 25, 2019**

# In the Court of Appeals of Georgia

A19A1237. THORNTON v. THE STATE.

BROWN, Judge.

Christopher Thornton appeals from his convictions of felony obstruction of an officer, OCGA § 16-10-24 (b), misdemeanor obstruction of an officer, OCGA § 16-10-24 (a), and driving without carrying a license, OCGA § 40-5-29 (a). He contends: (1) that insufficient evidence supports his obstruction convictions because the conservation ranger whom he was convicted of obstructing was not acting within the lawful discharge of his official duties under Title 27, and (2) that the trial court erred by refusing to give his proposed jury instructions outlining the duties and powers of a conservation ranger. For the reason explained below, we disagree and affirm.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that on January 10, 2013, a Georgia Department of Natural Resources conservation ranger[1] stopped at a convenience store in LaFayette, Georgia to fill up his work truck with gas after completing work-required random drug-testing in Rome, Georgia. His work truck was a gray F-150 pickup, four wheel drive, marked on the side with the words "Georgia Department of Natural Resources, Wildlife Resource Division" in large block lettering, along with an "outline of the State of Georgia" and a seal. While it had blue lights "in the tail lights and inside the cab," they were concealed, rather than being located on the top of the vehicle. The ranger testified that he was wearing a long-sleeve polo shirt with an embroidered badge stating "State of Georgia," green pants, black boots, and a clip-on

---

[1] The ranger testified that he is a POST-certified law enforcement officer for the State of Georgia, a Deputy Wildlife Conservation Officer with the U. S. Fish and Wildlife Service with "arrest powers nationwide in regard to federal violations," and "a sworn officer with the City of Trion."

badge on his duty belt. His duty belt included pepper spray, a baton, handcuffs, and a firearm.

When he got out of his truck to fill up his truck with gas, he heard "extremely loud music" coming from a black Honda parked at the pump adjacent to him. The ranger described the music as "very loud, it had a definite thumping, you know, whomp, whomp, whomp, you know, like rattling the car, maybe the speakers were rattling." The lyrics were profane and included the words "dick," "asses," and "pussy." The ranger approached Thornton, who was standing outside his car, and stated, "I am a law enforcement officer in Georgia, DNR, would you mind turning the music down . . . there are women and possibly children in the parking lot." Thornton responded, "I don't live here, man, and I'm not going to turn it down." The ranger asked him "a couple more times during the conversation, me asking him to turn the music down, he became even more belligerent." On the second or third request, the ranger told him "there are State laws and City ordinances against loud music," and asked again for Thornton to "please turn the music down, and [Thornton] responded screw you, man."

After Thornton's last comment, the ranger "instructed" him to remain outside the car, explaining that he did so "from a personal safety standpoint" because he "did

not know if he had a knife or gun in the vehicle." The ranger then walked to his truck to retrieve his radio to call the City of LaFayette to ask them to talk to Thornton about the ordinance violation. When he turned to look, Thornton "had gotten in the car," and as the ranger approached Thornton's car, "the music appeared to get louder." The ranger said "please step out of the car, you are under arrest for obstruction, and [Thornton's] comment was, I ain't going back to jail, fuck you, man." The ranger told him again to step out of the vehicle and provide a driver's license or identification. As Thornton flipped his wallet "open, back and forth," the ranger saw something that looked like an identification and reached inside the car to grab for the wallet. The car window was rolled up approximately four inches. As he grabbed the edge of the wallet and placed his arm inside the car up to his shoulder, the ranger realized that the car was moving across the parking lot. He "let go of the wallet" and tried to pull up the emergency brake, while continually telling Thornton "to stop the vehicle, stop the vehicle, stop the vehicle." As they were "getting pretty close" (approximately "10 or maybe 15 feet" away from a truck), the ranger snatched his arm out of the vehicle. The ranger testified that he was dragged approximately 12-28 feet and "this whole thing took place in probably five or six seconds." After the ranger freed himself, Thornton drove off. He was arrested shortly thereafter by City of LaFayette police

4

officers. The State submitted into evidence photographs showing the bruising of the underside of the ranger's right arm.

1. Thornton contends that insufficient evidence supports his obstruction convictions because the State failed to prove that the ranger was in the lawful discharge of his official duties. In support of this argument, he contends that the ranger's conduct fell outside the scope of his duties with the Department of Natural Resources, as outlined in OCGA §§ 27-1-16; 27-1-18; 27-1-19; and 27-1-20. The State responds that the ranger was in the lawful discharge of his official duties based upon OCGA § 40-13-30, in addition to OCGA § 27-1-20 (a) (10). Based upon our conclusion that the ranger had authority to enforce traffic laws under OCGA § 40-13-30, we need not consider the scope of his lawful authority under Title 27, Chapter 1, and find no merit in this enumeration of error.

OCGA § 40-13-30 provides:

Officers of the Georgia State Patrol and any other officer of this state[2] or of any county or municipality thereof having authority to arrest for a

---

[2] Former OCGA § 27-1-16 (a), in effect at the time of Thornton's offenses, provides that the commissioner of the Department of Natural Resources has "the power to appoint such a number of conservation rangers *of the state at large*, as may be necessary to carry out the duties assigned to them, who shall be charged with the law enforcement responsibilities pertaining to the department." (Emphasis supplied.)

criminal offense of the grade of misdemeanor shall have authority to prefer charges and bring offenders to trial under this article.[3]

This Court has repeatedly held that OCGA § 40-13-30 provides authority for officers, other than a municipal officer, to enforce traffic offenses outside of their ordinary jurisdiction. See, e.g., *Suggs v. State*, 343 Ga. App. 71, 73-74 (806 SE2d 224) (2017); *State v. Heredia*, 252 Ga. App. 89, 90 (1) (555 SE2d 91) (2001), disapproved on other grounds, *Zilke v. State*, 299 Ga. 232, 235 (787 SE2d 745) (2016).[4] As Department of Natural Resources conservation rangers have authority to arrest for misdemeanor

---

[3] This Code section appears within Article 2 (Arrests, Trials, and Appeals) of Chapter 13 (Prosecution of Traffic Offenses) in Title 40 (Motor Vehicles and Traffic). Under Article 2, probate and municipal courts are authorized

> to conduct trials, receive pleas of guilty, and impose sentence, in the manner required by law, upon defendants violating any and all criminal laws of this state relating to traffic upon the public roads, streets, and highways of this state where the penalty for the offense does not exceed that of the grade of misdemeanor.

OCGA § 40-13-21 (a). Additionally, probate courts are authorized "to issue warrants, try cases, and impose sentence thereon in all misdemeanor cases arising under the traffic laws of this state in all counties of this state in which there is no city, county, or state court, provided the defendant waives a jury trial." OCGA § 40-13-21 (b).

[4] As pointed out by this Court in *Suggs*, supra, the Supreme Court of Georgia in *Zilke* "did not consider or render any opinion as to the arrest authority conferred by OCGA § 40-13-30." *Suggs*, 343 Ga. App. at 73.

6

criminal offenses,[5] and the ranger was authorized to enforce traffic offenses under Title 40,[6] the State presented sufficient evidence that the ranger was acting within the lawful discharge of his official duties when he asked Thornton to turn down the music. Likewise, a reasonable jury could conclude that the order for Thornton to provide identification and remain outside of his vehicle for the ranger's safety were also lawful commands. See *Timberlake v. State*, 315 Ga. App. 693, 695 (1) (727 SE2d 516) (2012) (jury could find defendant impeded officer in lawful discharge of his duties by placing officer's safety at risk by refusing to return to his vehicle and preventing officer from obtaining identification from the driver). Finally, the trier of

---

[5] See former OCGA § 27-1-20 (a) (4) (conservation ranger has power "[t]o arrest without warrant any person found violating any of the laws, rules, and regulations pertaining to wildlife or to hunting, fishing, or boating"); OCGA § 27-1-38 ("any person who violates any of the provisions of this title shall be guilty of a misdemeanor").

[6] See OCGA § 40-6-3 (a) (2) ("The provisions of this chapter shall apply to a vehicle operated at shopping centers or parking lots or similar areas which although privately owned are customarily used by the public as through streets or connector streets"); OCGA § 40-6-14 (a) ("It is unlawful for any person operating or occupying a motor vehicle on a street or highway to operate or amplify the sound produced by a radio, tape player, or other mechanical sound-making device or instrument from within the motor vehicle so that the sound is plainly audible at a distance of 100 feet or more from the motor vehicle."); *Jackson v. State*, 297 Ga. App. 615, 617 (677 SE2d 782) (2009) (holding reasonable for "officer to believe that OCGA § 40-6-14 (a) applied to the parking lot of convenience store/gas station where [defendant]'s vehicle was parked").

fact could also find from the evidence that the ranger's order for Thornton to stop the vehicle was also within the lawful discharge of his official duties. See *In the Interest of E. G.*, 286 Ga. App. 137, 139 (2) (648 SE2d 699) (2007) ("flight, or attempted flight, after a command to halt constitutes obstruction of an officer within the meaning of OCGA § 16-10-24") (citation and punctuation omitted). Accordingly, we find no merit in Thornton's claim that the State presented insufficient evidence that the ranger was acting within the lawful discharge of his official duties.

2. In his remaining enumeration of error, Thornton contends that the trial court erred by failing to charge the jury on a conservation ranger's duties under OCGA § § 27-1-6; 27-1-16; 27-1-18; 27-1-19; 27-1-20. Based upon our holding in Division 1, this enumeration of error is moot.

*Judgment affirmed. Barnes, P. J., and Mercier, J., concur*.