**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A2017. JACKSON v. THE STATE.

BROWN, Judge.

Dell Jackson appeals from his convictions of armed robbery and possession of a firearm during the commission of a felony. He asserts that insufficient evidence supports his convictions and that he is entitled to a new trial due to ineffective assistance of counsel. For the reasons explained below, we agree that Jackson is entitled to a new trial.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

> is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light

most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that the victim, who worked at a café, went to the bank around 1:30 a.m. to 2:00 a.m. after he got off work. After leaving the bank, he went to a convenience store before driving home. When he was around halfway home, he noticed that a car appeared to be following him. After parking, he walked to the end of his driveway to close the gate and the passenger in the car that had followed him asked him for directions. When the man asked him for "a light," the victim walked back to his car, retrieved a lighter, and gave it to the passenger. As he turned away, the passenger, who was still inside the car, "pulled a gun," pointed it at the victim's head and told him to "[g]et on the ground." The man got out of the car, took his wallet, got back in the car, and left. The victim testified that a bright light post near his driveway allowed him to get a good look at the robber, who was wearing a white T-shirt, some jeans, and white tennis shoes. The gun was black and "either a 9-millimeter or a .45."

Immediately after he was robbed, the victim called 911, and police officers arrived within "three minutes, if that." They found a Virginia College lanyard with

2

keys in the yard that did not belong to the victim. A patrol officer saw a car matching the description of the car involved in the armed robbery, a Dodge Charger, and followed it into an apartment complex. She saw the driver get out of the car and go inside an apartment, while the passenger got out and "ducked down" between two cars. She got out of her patrol car, asked the passenger what he was doing, and learned that he was looking for his keys to a Lincoln MKS. When she asked where he had been, he said he had just left an apartment after "having relations with some female." She asked for the passenger's identification, learned that he was Jackson, used her radio to contact the primary investigating officer to confirm the physical description and clothing, and advised that Jackson stated he was looking for his keys.

The police brought the victim to Jackson's location at the apartment complex, where he identified Jackson as the man who had robbed him. The lanyard and keys were also taken to that location, where they opened the Lincoln MKS "that was registered to Mr. Jackson." After being placed under arrest and read his Miranda rights, Jackson told the officer that he had not been in the Dodge Charger that evening, that someone named James was the driver, that someone named Trent was the passenger, and that he was with a woman named Ashley during the robbery. He could not provide her number to the officer because his pink iPhone had fallen out of

his back pocket, which had a hole in it. At no time during the interview did Jackson state that he had been coerced to commit an armed robbery by Brandon Clark. Police investigation revealed that the Dodge Charger was registered in the name of Brandon Clark's wife, and that the car was parked in front of their apartment after the robbery. A search of the Dodge Charger revealed a pink iPhone in the front passenger seat, and a loaded 9-millimeter chrome pistol with a black handle under the front passenger seat.  Approximately six weeks after the robbery, Jackson and his trial counsel met with the detective assigned to the case to provide information about "other events" that might help with bond and "the main case"; the meeting was video recorded and played in its entirety for the jury. In this meeting, Jackson explained that he was riding with Clark because Clark owed him $80 and asked if he wanted to ride with him to go pick it up. After driving Jackson to a house and leaving him outside for approximately 30 minutes, Clark came out with red eyes and a white substance in his nose. When Jackson asked Clark to take him to his car, Clark said, "I'm about to go get the money."

According to Jackson, Clark then drove to two banks and followed cars that had pulled away from an ATM before following the victim in this case. After following the victim to his home, Clark pulled out a chrome .45. When Jackson asked

4

what it was for, Clark said "you're about to see." Jackson told him not to do it and to "chill." Clark rolled down the passenger side window beside Jackson and asked the victim a question. When the victim returned to his car, Clark tried to hand the gun to Jackson and told him "to go see what he got there." Jackson asked Clark to take him "to [his] car or [he] would get out and walk." After the victim closed his car door, Jackson felt Clark press the gun on his leg in a twisting motion and Clark told him again "to go see what he got." Jackson explained that at that moment, he knew Clark was serious and he took the chrome gun, got out of the car with it, and robbed the victim. From the moment Clark put the gun on his leg, Jackson was scared. As they were leaving the scene of the robbery, Jackson threw the victim's wallet and the chrome gun out the window. When questioned by the detective, Jackson said that the gun held to his leg was a small black gun that could fit in a pocket.[1] As Jackson was explaining why he did not run away after Clark handed him a gun, his attorney interrupted him, stating, "Dell, Dell, you're not going to convince us that this was reasonable behavior. It wasn't. . . . What I told you the first time I met you . . . kind of crazy." She then asked another question clarifying that he did not know whether

---

[1] The police never recovered a small, black gun that could fit inside someone's pocket.

the chrome gun provided by Clark was loaded. Finally, Jackson explained that he did not initially tell the police about Clark's involvement because Clark threatened to kill him if he told anybody about it.

Although Jackson did not testify at trial, he presented testimony from a barbershop coworker that Jackson and Clark had an altercation when Clark came into the barbershop approximately four months after the robbery. They "exchanged words verbally . . . cussing back and forth," and Clark threatened Jackson by "pretty much telling him that he should have been dead." He explained "they got to fighting" and Clark pulled a gun on Jackson. According to the coworker, Jackson reported this incident to the police.

1. Jackson asserts that insufficient evidence supports his armed robbery conviction because the State did not disprove coercion. We disagree.

> Coercion is, of course, a defense to any crime except murder. OCGA §
> 16-3-26. However, the fear engendered by the coercion must be of
> present and immediate violence at the time the coerced crime is being
> committed. Coercion is a defense only if the person coerced has no
> reasonable way, other than committing the crime, to escape the threat of
> harm. That question is for the jury, as are questions of the credibility of
> the witnesses.

(Citations and punctuation omitted.) *Stitt v. State*, 190 Ga. App. 58, 59 (378 SE2d 168) (1989). See also *Bailey v. State*, 245 Ga. App. 852, 854 (1) (539 SE2d 191) (2000) (whether State has met its burden to disprove coercion is for the jury). We find that a reasonable finder of fact could conclude that the State disproved Jackson's coercion defense based upon his failure to tell the police that he was coerced in the first statement he gave immediately after his arrest and the fact that he had an opportunity to escape when he exited the car to rob the victim. See *Edwards v. State*, 285 Ga. App. 227, 228 (1) (645 SE2d 699) (2007) (failure to mention coercion in statement to police can be used to disprove coercion); *Stitt*, 190 Ga. App. at 59 (opportunity to escape can be used to disprove coercion).

2. Jackson asserts that he is entitled to a new trial because his attorney failed to seek redaction of the comments she made about the reasonableness of his story during his videotaped interview.

> In order to succeed on his claim of ineffective assistance, [Jackson] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the

7

reviewing court does not have to examine the other prong. Id. at 697 (IV).

(Citation and punctuation omitted.) *Baugh v. State*, 293 Ga. 52, 54 (2) (743 SE2d 407) (2013). "The test for determining whether trial counsel's performance was deficient is whether a reasonable lawyer could have acted, under the same circumstances, as defense counsel acted before and during the trial." (Citation and punctuation omitted.) *Davis v. State*, 342 Ga. App. 889, 896 (2) (806 SE2d 2) (2017). In this case, trial counsel testified in the motion for new trial hearing that she did not consider filing a motion to redact her comments and that she should have done so. She explained that she watched the interview video with her client, his wife, and her assistant a few days before trial and advised Jackson that he should enter a plea rather than going to trial. Although they had "intended to enter a plea the whole time," he changed his mind on a Monday, and they "picked a jury that same day." At that point, she had not subpoenaed any witnesses because she "really, really thought" that Jackson would plead guilty. The case was tried on Wednesday and Thursday. Trial counsel offered no strategic reason for failing to ask that the interview be redacted before it was played for the jury. She stated that Jackson's main defense was coercion.

In trial counsel's opening argument, she stated that this was a case about "[c]oercion, duress, having a gun pointed against your leg and being forced to rob somebody, contacting the detective and telling your side of the story and the detective not believing a word you say; these are the things you're going to hear about this week." She also explained:

> I'm sure [the State] is going to play the tape of Dell Jackson speaking to the detective. . . . I'm sure that's going to happen. What you don't know, and you will find out, is I called that meeting. I did. On Dell Jackson's request. Because he really, really, really wanted to meet with the detective and tell him what happened, what really happened that night.

During its closing argument, the State quoted trial counsel's statement in the video as follows:

> And remember the response at some point when they're talking about that from [trial counsel.] She goes, Dell, you're not going to convince us that this was reasonable behavior. It wasn't. That's what I told you the first time I met you. It's kind of crazy. Even his own attorney at that interview thought that's not reasonable behavior. That's not what a reasonable person would do. And under the law, there has to be a reasonable cause to believe. Not what Dell Jackson thought, . . . but what he reasonably believed. But his action was not reasonable behavior, just like [trial counsel] said in the tape.

9

Based upon this record, it is obvious that no reasonable attorney would have failed to seek redaction of her comments from the videotape and that a trial court would have abused its discretion in failing to authorize such a redaction. The attorney's statements related to opinion, not fact, and were not relevant evidence. See OCGA § 24-4-401 (relevant evidence has "any tendency to make the existence of *any fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence") (emphasis supplied); OCGA § 24-4-402 ("Evidence which is not relevant shall not be admissible."). Even if they were somehow relevant and admissible, there can be no doubt that a trial court would abuse its discretion by failing to conclude that the statements should be excluded under OCGA § 24-4-403 based upon the danger of unfair prejudice.

Having concluded that counsel's performance was deficient, we must now determine whether a reasonable probability exists that the trial result would have been different if not for the deficient performance. See *Baugh*, 293 Ga. at 54 (2). While the State submitted evidence sufficient to disprove the coercion defense asserted by Jackson in the video, Jackson presented evidence at trial of a subsequent altercation between himself and Clark, during which Clark stated that Jackson should be dead. Given the damaging nature of counsel's unredacted comments used to great effect by

the State in its closing argument and the fact that the credibility of witnesses and questions of coercion are for the jury, we conclude that a reasonable probability exists that the outcome would have been different but for counsel's deficient performance. We therefore reverse Jackson's conviction. Because we found that sufficient evidence supports his convictions, the State may retry him. See generally *Fisher v. State*, 299 Ga. 478 (788 SE2d 757) (2016).

3. Jackson's remaining claims of ineffective assistance of counsel are rendered moot by our holding in Division 2.

*Judgment reversed. Barnes, P. J., and Mercier, J., concur*.