A01A1715, A01A1717. COLLIS v. THE STATE (two cases).
A01A1716. HYDE v. THE STATE.
(556 SE2d 221)

PHIPPS, Judge.

Jeffrey Collis and Jody Hyde were tried on charges which included armed robbery and hijacking a motor vehicle. On motion by Hyde, the trial court declared a mistrial. Both Collis and Hyde sought to prevent retrial by filing pleas in bar based on the theory of double jeopardy. The trial court denied the motions. On retrial, both Collis and Hyde were convicted of armed robbery; Hyde alone was convicted of hijacking a motor vehicle. In Case No. A01A1715, Collis appeals the denial of his plea in bar. In Case No. A01A1717, he appeals his conviction. In Case No. A01A1716, Hyde appeals the denial of his plea in bar as well as his convictions. We affirm in all cases.

Evidence introduced at both the first and second trial showed essentially the following. Collis and Hyde were joint participants in a sport known as "paintball." They decided to commit theft by having paintball equipment delivered to a residence not traceable to either of them and then taking the equipment from the deliveryman without paying for it. They engaged in extensive planning and preparation for the robbery.

When a United Parcel Service (UPS) deliveryman, Robby Hales,

approached the carport entrance to the residence on the day of the robbery, Hyde emerged with a gun in hand while Collis remained inside. Hyde informed Hales that he was being robbed and ordered him to come into the house to be bound and gagged. Instead, Hales fled toward the adjacent roadway with Hyde in pursuit. When Hales began to flag down a passing car, Hyde ended the chase and returned to the delivery truck.

As the events involving Hyde and Hales transpired, Collis became frightened, decided he wanted to end his involvement in the robbery, and fled out the rear of the house. Because the backyard was fenced and surrounded by woods, Collis ran around the house to the driveway. He got into the back of the delivery truck as Hyde was driving it away and began searching for the paintball equipment at Hyde's request. When Collis informed Hyde that no equipment was there, Hyde stopped the van abruptly, and the two fled on foot.

During the first trial, an audio recording of an interview between Hyde's girlfriend, Samantha Evans, and a police detective was played for the jury. Before the tape was played, the prosecuting attorney acknowledged that certain inadmissible matters (consisting of references to prior criminal behavior by Hyde) were discussed on the tape and stated that she would lower the volume on the tape when these matters were discussed. As the tape was played, Hyde's attorney Law interrupted the proceedings and, at a bench confer (at which Collis's attorney was present), moved for a mistrial. The following discussion took place between Law, the court, and prosecuting attorney Paris:

> MR. LAW: Your honor, I'd move for a mistrial. That clearly put my client's character in evidence.
> THE COURT: What did it say? I wasn't really listening.
> MR. LAW: It was saying — Ms. Paris stated she was going to turn it down during that part.
> MS. PARIS: That wasn't the part I was talking about.
> MR. LAW: It talked about his past because he had done bad things before and he had promised me he would never do that again. That's absolutely prejudicial. I move for a mistrial.
> MS. PARIS: Your Honor, it's not specific.
> THE COURT: It doesn't have to be specific. All right. If that's what you want, that's what you've got.
> MR. LAW: I've got no option, Judge.
> MS. PARIS: Your Honor, can I ask for curative instructions, instead?
> THE COURT: No.
> (Whereupon, end of bench conference.)

THE COURT: All right. Ladies and gentlemen, the defendant in this case has requested the Court to declare a mistrial, and that's exactly what I'm going to do. You're free to go.
(Whereupon, the jurors are dismissed.)

1. (a) Because Hyde moved for a mistrial, double jeopardy does not bar his retrial unless the prosecutorial conduct which caused the mistrial was intended to "goad" him into moving for a mistrial in order to afford the prosecution a more favorable opportunity to convict.[1] A blunder or mistake by the prosecutor is of no avail.[2]

Both Collis and Hyde argue that the prosecutor intended to goad Hyde into moving for a mistrial because the trial was not going well for the State. In support of this assertion, defendants rely on the fact that earlier in the trial the prosecutor had protested that the State's case was "hopelessly prejudiced" by the trial court allowing the defense to show the mandatory minimum sentence for armed robbery in cross-examining a prosecution witness who had been indicted along with the defendants. The prosecutor denies that her intent was to goad Hyde into moving for a mistrial. She points to the fact that she requested curative instructions instead of a mistrial. The prosecutor maintains that she simply neglected to lower the tape volume while one rather vague reference to Hyde's criminal behavior was mentioned. The trial court found that the prosecutor's omission was the result of prosecutorial negligence or mistake rather than deliberate misconduct. "The question of whether the State intended to 'goad' a defendant into requesting a mistrial 'is a fact question for the (trial) court to resolve. [Cit.]' [Cit.]"[3] On the record before us, we cannot say that the trial court erred in resolving this question in favor of the State.[4]

(b) Because Collis did not join in Hyde's request for a mistrial, Collis may be retried only if (1) there was a "manifest necessity" for the declaration of a mistrial as to him, or (2) he acquiesced by silence in the ruling of the court by failing to object to it, thereby impliedly consenting to the mistrial.[5]

Collis argues, and we agree, that there was no necessity for grant of the mistrial as to him. Therefore, the question is whether he acquiesced by silence in the court's grant of Hyde's motion for mis-

---

[1] See *Oliver v. State*, 216 Ga. App. 76, 78 (453 SE2d 746) (1995).

[2] *Mosley v. State*, 230 Ga. App. 890, 891-892 (1) (497 SE2d 608) (1998).

[3] *Ward v. State*, 230 Ga. App. 581, 582 (497 SE2d 65) (1998).

[4] Compare *Ritter v. State*, 269 Ga. 884 (506 SE2d 857) (1998), with *Wilson v. State*, 233 Ga. App. 327, 329 (3) (503 SE2d 924) (1998) (physical precedent only).

[5] See *Dotson v. State*, 213 Ga. App. 7, 8, 10 (1) (443 SE2d 650) (1994); see also *State v. Johnson*, 267 Ga. 305 (477 SE2d 579) (1996).

trial. Resolution of this question depends on whether Collis had an opportunity to object to the court's ruling before the mistrial was declared and the jury dismissed.[6] Although the transcript tends to support Collis's argument that he did not have an opportunity to raise a timely objection, it does not conclusively resolve the question. Whether Collis had an opportunity to object turns on the amount of time which elapsed between the court's expression of its intent to declare the mistrial and the dismissal of the jury. At the hearing on Collis's and Hyde's pleas in bar, the court found as a matter of fact that Collis had adequate time to object to the grant of the mistrial before the jury was dismissed. As the appellate record does not reflect the timing of trial events, we must accept this ruling as correct.[7]

2. Both Collis and Hyde contend that the court erred in denying their demurrers to the armed robbery count of the indictment on the ground that it failed to allege that the thing taken was "property of another."

OCGA § 16-8-41 (a) provides, in pertinent part, that a person commits the offense of armed robbery when, with intent to commit theft, he or she takes "property of another from the person or the immediate presence of another." Consequently, in an armed robbery case, the State must allege and prove that the defendant took property of a person or persons other than the accused.[8] The indictment in this case charged Collis and Hyde with having taken "property, to wit: a United Parcel Service vehicle, from the immediate presence of Robby Hales." This constituted an allegation that the vehicle belonged to UPS and sufficiently put the defendants on notice that the property taken was that of another. "[T]he gravamen of the offense of armed robbery is the taking of items from the possession of another by use of an offensive weapon, and not the ownership status of the item taken."[9] "Robbery is a crime against possession, and is not affected by concepts of ownership."[10]

3. Hyde charges the trial court with error in denying his motion for directed verdict because of an absence of proof that property "of another" was taken in the armed robbery. There is no merit in this contention. Testimony given by Hales and UPS security personnel authorized the jury to find that the UPS vehicle did not belong to

---

[6] See *Dotson v. State*, supra at 10.

[7] See generally *State v. Johnson*, supra; compare *Dotson v. State*, supra.

[8] *Cain v. State*, 212 Ga. App. 531, 537 (5) (442 SE2d 279) (1994).

[9] (Footnote omitted.) *Holcomb v. State*, 268 Ga. 100, 105 (5) (485 SE2d 192) (1997).

[10] (Citations and punctuation omitted.) *Snelling v. State*, 215 Ga. App. 263, 268 (2) (450 SE2d 299) (1994).

either defendant and was taken by them from the lawful possession of Hales.

4. Hyde claims that the court erred in charging the jury, with regard to the definition of armed robbery, that a person commits armed robbery when that person takes "any" property of another.

Hyde did not, however, object to this charge, and when the jury asked for a recharge on the definition of armed robbery, the trial court omitted the word "any." Moreover, the State presented no evidence that the defendants took any property from Hales other than the UPS vehicle. Therefore, "we do not believe there is a reasonable possibility that the court's apparent slip of the tongue misled the jury. . . ."[11]

5. Hyde contends that the court erred in repeatedly charging the jury, consistent with the motor vehicle hijacking statute, that a person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another "by force and violence, or intimidation. . . ."[12] Although Hyde did not object to this charge at trial, he reserved his right to raise objections on appeal. Hyde complains that the charge was error because the indictment charged the defendants with committing motor vehicle hijacking only "by force and violence."

In a related enumeration, Hyde contends that the trial court erred in denying his motion for directed verdict on the count of hijacking a motor vehicle because the evidence showed that any hijacking was committed by intimidation rather than by force and violence. Hyde bases this claim on Hales's testimony that he was intimidated as a result of being threatened with a gun but that no one ever physically assaulted him.

Because we are of the opinion that threatening someone with a gun constitutes intimidation, as well as force and violence, we find no harmful error in the charge[13] and no error in the denial of Hyde's motion for directed verdict.

6. Both Collis and Hyde enumerate as error the trial court's refusal to declare a mistrial after the court commented to the jury that it was going to spend the remainder of the day conferring with the lawyers in regard to jury instructions because "of the nature of this case, as you can tell, it's a serious matter."

---

[11] *Burns v. State*, 246 Ga. App. 383, 384 (1) (540 SE2d 640) (2000).

[12] OCGA § 16-5-44.1 (b).

[13] See *Chapman v. State*, 273 Ga. 865, 867 (2) (548 SE2d 278) (2001) (although it is error to instruct the jury that a crime may be committed by either of two methods when the indictment charges it was committed by one specific method, the error is not harmful unless there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in the uncharged manner).

The defendants complain that this comment had the effect of dissuading the jury from finding them guilty of lesser included offenses. We cannot agree. The context in which the comment was made makes clear that the trial court was merely explaining why holding a charge conference between counsel and the court would necessitate the jury's absence from the courtroom for the remainder of the day.

7. Both Collis and Hyde charge the trial court with error in refusing to charge the jury on criminal attempt. Collis additionally complains of the court's refusal to charge the jury on abandonment. We find no error.

Although the defendants correctly argue that the evidence showed that they only attempted to take the paintball equipment, it showed without dispute that, as alleged in the indictment, they did take the UPS vehicle. Where the evidence shows a completed crime, there is no error in refusing to charge on attempt.[14]

Collis argues that the trial court should have charged on abandonment because there was evidence from which the jury could have found that he abandoned his attempt to steal the paintball equipment and later joined Hyde in the UPS vehicle as a means of escape. At trial, however, Collis acknowledged that he began looking for paintball equipment after entering the vehicle and that he and Hyde would have taken such equipment if he had found any. Under these circumstances, no charge on abandonment was warranted.

8. Hyde complains of the trial court's refusal to charge the jury on the lesser included misdemeanor offense of pointing or aiming a gun or pistol at another.[15]

The misdemeanor, however, "applies only where the victim is not placed in reasonable apprehension of immediate violent injury by the pointing of the firearm (e.g., when the victim is unaware a weapon has been pointed at him or her)."[16] While facing Hales, Hyde pointed a gun at him and ordered him to place himself in a position which he reasonably perceived as life threatening. Hales was thereby placed in reasonable apprehension of immediate violent injury if he did not comply.

9. Both Collis and Hyde contend that the trial court erred in refusing to declare a mistrial based on the prosecutor's inappropriate use of Hales's presence in the courtroom to elicit sympathy from the jury.

At trial, defendants complained that the prosecutor's continuous physical interaction with Hales throughout the trial resulted in Hales's use as a "prosecution prop." The trial court disagreed that

---

[14] *Sanders v. State*, 251 Ga. 70, 77 (4) (303 SE2d 13) (1983).
[15] OCGA § 16-11-102.
[16] *Watson v. State*, 199 Ga. App. 825, 827 (3) (406 SE2d 509) (1991).

Hales was being used in any such improper manner and denied the motion. The grant or denial of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge.[17] On the record before us, defendants have shown no abuse of discretion.

10. Hyde contends that the court erred in denying his motion for mistrial because co-counsel's reference to his involvement in a prior hearing improperly placed his character in issue. Because co-counsel's statement did not have the effect suggested by Hyde,[18] we find no error.

11. Hyde enumerates as error the court's denial of his motion to sever parties.

He argues that a severance should have been granted because of the existence of "prejudicial evidentiary overlap."[19] But he has made no showing by citation to the record that any such overlap existed. We find no abuse of discretion in the trial court's denial of Hyde's motion to sever.[20]

12. Hyde charges the court with error in denying his motion to disqualify the district attorney because he appeared at a hearing and gave testimony relating to a pretrial challenge to the composition of the grand jury. Because the district attorney's testimony pertained to formal matters only, it cannot be said that the trial court erred in denying the motion to disqualify.[21]

13. Hyde contends that the court erred in questioning a prosecution witness in an effort to assist the State in laying a proper evidentiary foundation for admission of evidence under the business records exception to the hearsay rule. Because Hyde did not object to this at trial, the issue has been waived.[22]

14. Finally, Collis contends that the trial court erred in denying his motion to suppress incriminatory pretrial statements he made to law enforcement officers. Collis argues that the statements were involuntary under OCGA § 24-3-50 because they were induced by hope of benefit, i.e., a lighter sentence.[23]

Testimony given by the officers authorized the court to find that they had told Collis that it is better to tell the truth and that, if he did so, they would inform the district attorney and do all they could for him. "[A]n investigator does not make an offer of hope of benefit upon telling a defendant that his or her cooperation will be made known to the prosecution, [cits.], or by offering help to the defendant.

---

[17] *Cain v. State*, supra at 535 (2).
[18] See *Mann v. State*, 244 Ga. App. 756, 759 (3) (536 SE2d 608) (2000).
[19] *Sharpe v. State*, 272 Ga. 684, 686 (2) (531 SE2d 84) (2000).
[20] See generally *Jackson v. State*, 239 Ga. App. 77, 82 (2) (519 SE2d 746) (1999).
[21] *Thomas v. State*, 192 Ga. App. 744, 745 (2) (386 SE2d 402) (1989).
[22] *Turner v. State*, 245 Ga. App. 294, 299 (5) (536 SE2d 814) (2000).
[23] See *Davis v. State*, 245 Ga. App. 508, 509 (538 SE2d 159) (2000).

[Cit.]"[24] "A reward of lighter punishment is generally the 'hope of benefit' to which OCGA § 24-3-50 refers. For an officer to advise an accused that it is always best to tell the truth will not, without more, render a subsequent confession inadmissible under OCGA § 24-3-50."[25] We find no error in the trial court's denial of Collis's motion to suppress.

*Judgments affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 6, 2001 —
RECONSIDERATION DENIED NOVEMBER 30, 2001 — ■

*Donald C. Evans, Jr.*, for appellant (case nos. A01A1715 and A01A1717).

*P. Cole Law*, for appellant (case no. A01A1716).

*T. Joseph Campbell, District Attorney, Rebecca B. Paris, Assistant District Attorney*, for appellee.

---

[24] Id.

[25] (Citations and punctuation omitted.) *McKenzie v. State*, 187 Ga. App. 840, 843 (3) (371 SE2d 869) (1988).