**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**May 30, 2023**

# In the Court of Appeals of Georgia

A23A0308. PENIX v. THE STATE.

BROWN, Judge.

Dennis Penix appeals from his convictions of robbery by intimidation, theft by taking, and two counts of battery. He asserts that the trial court erred in (1) denying his motion for a directed verdict on the battery charges; (2) refusing to give two of his requested jury charges; and (3) denying his motion for a continuance to obtain counsel of his own choosing. For the reasons explained below, we disagree and affirm.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence

is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

(Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that on November 12, 2021, a county jail employee was working a 12-hour night shift, entered pod 136, and discovered that a sock had been placed in Penix's cell door to prevent it from closing at the evening lockdown time. After she pulled the sock out of the door, Penix placed his hand in the door crack so that she could not close the door. He then asked that his roommate be placed in a different cell and during the process of attempting to move the roommate into a different cell, Penix suddenly came up behind the jailer, wrapped his arms around her shoulders, and threw her to the ground. At the same time, he told her to give him the master key, and threatened to kill her. While they were both on the floor, the jailer attempted to throw the key to another jailer. A scuffle for the key ensued, which was still close to the first jailer and in her proximity. The first jailer did not know if the second jailer ever obtained control of the key as she did not have a clear line of sight, but did not think she did.

The second jailer testified that she tried to reach the key on the ground but was "shoved hard" by a running Penix before she could get it. The first jailer saw Penix push the second jailer and testified that he threatened to kill her a second time. The first jailer could not say for sure whether she regained the key and could not recall if Penix took the key out of her hand because there was a lot she did not remember; the second jailer testified that the first jailer did recover the key and that Penix threatened the first jailer and took it from her.

After obtaining the key, Penix locked both jailers in a cell. Surveillance video showed several inmates entering the control room (Penix was not the first to enter), rifling through the jailers' personal belongings, and escaping the jail in a minivan of one of the jailers.

The first jailer testified that she suffered a torn rotator cuff, herniated disc in her neck, and visible bruises as a result of the incident. The second jailer testified that Penix rammed her into a "corner cut" causing her to hit her back "pretty hard," and that she was on leave from her employment at the jail because of her back injury. She testified that she did not have "[a]ny kind of bruising" or "visible bodily injury . . . that [she] was able to see."

The State charged Penix with robbery by intimidation for threatening to harm the first jailer if she did not give him the key, two counts of possession of a firearm (tasers) during the commission of a felony, theft by taking the second jailer's minivan, two counts of battery, and escape. Penix pleaded guilty to the escape charge before trial, and the jury found him guilty of all charges other than the two counts of possession of a firearm during the commission of a felony.

1. Penix contends that the trial court should have granted his motion for a directed verdict of acquittal based on his argument below and on appeal that there was a fatal variance between the allegations in the indictment and the proof offered at trial with regard to the battery counts. We disagree.

The indictment charged Penix with battery for "intentionally caus[ing] visible bodily harm . . . by striking [the jailers] with his hands. . . ." According to Penix, evidence that he "push[ed] and wrestl[ed] the jailers over the key" did not conform to the specific allegation in the indictment, and "he prepared his defense to the battery charges knowing that he did not strike either jailor with his fists." In his view, insufficient evidence supports his conviction based on the particular allegations in the indictment.

4

The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

(Citation and punctuation omitted.) *DePalma v. State*, 225 Ga. 465, 469-470 (3) (169 SE2d 801) (1969). Our courts do not "employ an overly technical application of the fatal variance rule, focusing instead on materiality." (Citation and punctuation omitted.) *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006).

(a) In our view, acceptance of Penix's argument for a distinction between the use of his fists, which is not mentioned in the indictment, and using his hands to push the jailers would result in an improper and overly technical application of the fatal variance rule. Additionally, "[a]lthough the evidence differed somewhat from the allegation in the indictment, we find no material difference." (Citation and punctuation omitted.) *Fletcher v. State*, 326 Ga. App. 389, 393 (4) b) (756 SE2d 625) (2014) (rejecting fatal variance argument because no material difference in allegation of indictment charging the defendant with using his hands to choke the victim and the proof presented at trial showing that he used his arms to choke her).

5

(b) Penix also asserts that the State failed to present sufficient evidence of visible bodily injury as alleged in the indictment and therefore insufficient evidence supports these convictions. A defendant commits the offense of battery when he "intentionally causes substantial physical harm *or* visible bodily harm to another." (Emphasis supplied.) OCGA § 16-5-23.1 (a). As defined in the statute, the term "'visible bodily harm'" means "bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts." OCGA § 16-5-23.1 (b). In Penix's view, the State's evidence failed because the first jailer did not expressly describe her bruises as "substantial" and the second jailer testified that she did not have "[a]ny kind of bruising" or "visible bodily injury . . . that *[she] was able to see*." (Emphasis supplied.) We disagree.

First, visible bodily harm may be shown through circumstantial evidence. *Miller v. State*, 240 Ga. App. 18, 20 (3) (522 SE2d 519) (1999) (finding sufficient circumstantial evidence of visible bodily injury where defendant knocked victim down, dragged her across yard, and injured her knees). Second, the visible bodily harm must be capable of being perceived by a person other than the victim. Thus, the fact that the second jailer did not perceive visible bodily harm to herself does not

6

mean it was not capable of being perceived by another. In this case, the jury could have concluded that the first jailer's torn rotator cuff and visible bruises fulfilled the State's burden of proving visible bodily harm under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Additionally, the jury could have concluded that visible bodily harm resulted from Penix ramming the second jailer "pretty hard" into a "corner cut" such that she continued to have difficulty sleeping and was unable to return to work over three months later.

2. Penix argues that the trial court erred by refusing to give the following charge to the jury:

> Where an indictment charges a defendant with committing an offense by one specific method, the defendant cannot be convicted of that offense based on a totally different, unspecified method. No averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance.

This charge is not included in the Georgia Suggested Pattern Jury Instructions, Criminal Cases, and the cases cited by Penix in his written request for the charge below do not endorse such a jury charge. See *Delacruz*, 280 Ga. 392 at 396-397 (3); *Petty v. Smith*, 279 Ga. 273, 274-275 (612 SE2d 276) (2005); *Gentry v. State*, 212 Ga.

7

App. 79, 82-84 (4) (441 SE2d 249) (1994). On appeal, he cites no legal authority authorizing or mandating a jury charge on the legal proposition in his proposed charge. See, e.g., *Griffin v. State*, 294 Ga. 325, 328 (751 SE2d 773) (2013) ("[t]he [S]tate must prove all material allegations in an indictment which describe the offense or the particular manner in which the offense was committed") (citation and punctuation omitted); *Whaley v. State*, 337 Ga. App. 50, 56-57 (3) (785 SE2d 685) (2016) ("If the indictment sets out the offense as done in a particular way, the proof must show it so. No averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed. All such averments must be proved as laid.") (citation and punctuation omitted).

We must "review de novo a properly preserved claim that a trial court erred in refusing to instruct the jury on an applicable principle of law." *Wilson v. State*, Ga. (5) (883 SE2d 802) (2023). "In evaluating a claim that the trial court was required to give certain jury instructions, we view the charge as a whole to determine whether the jury was fully and fairly instructed." (Citation and punctuation omitted.) *Clark v. State*, 315 Ga. 423, 440 (4) (883 SE2d 317) (2023). When making this determination, we should keep in mind that "[e]ven though language used by the appellate courts in a decision may embody sound law, it is not always appropriate to employ such

language in instructing the jury." *Stull v. State*, 230 Ga. 99, 104 (4) (196 SE2d 7) (1973). See also *Ware v. State*, 305 Ga. 457, 460 (2) (826 SE2d 56) (2019) (holding "explanatory language in prior case law is not required to be included in jury instructions at a defendant's request").

Here, the trial court read the indictment to the jury and instructed it that Penix could not be "convicted of any crime unless and until each element of the crime as charged is proven beyond a reasonable doubt," on the State's burden "to prove every material allegation of the indictment and every essential element of the crimes charged beyond a reasonable doubt," that a person commits battery by "intentionally caus[ing] visible bodily harm to another," and the statutory definition of visible bodily harm. These charges, taken together, adequately informed the jury about the evidence required to find Penix guilty of the crimes charged in the indictment. "Because the trial court fully and correctly instructed the jury on the relevant points of law, it was not error to fail to give the additional explanatory instruction that [Penix] requested." *Wilson*, Ga. at (5).

3. Penix asserts that the trial court erred by denying his request to charge criminal attempt to commit robbery by intimidation. The indictment charged that Penix and four other inmates "individually and as parties concerned in the

9

commission of a crime," committed robbery by intimidation by taking the master jail key from the immediate presence of the first jailer by placing her in fear of immediate bodily injury "in that he threatened to harm [the first jailer] if she did not give him the jail key." In Penix's view, an alleged conflict in the evidence as to whether the first jailer regained possession of the key after she threw it to the second jailer and evidence that a different inmate entered the locked control room first would have authorized the jury to conclude that Penix did not regain actual custody of the key from the first jailer. Thus, in his view, a charge on attempt was authorized. The State responds that the entire sequence of events should be viewed as a whole and that the crime of robbery by intimidation was complete when either Penix or one of his fellow inmates obtained the key as Penix was charged as a party to the crime.

"A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. "Where the evidence shows a completed crime, there is no error in refusing to charge on attempt." *Collis v. State*, 252 Ga. App. 659, 664 (7) (556 SE2d 221) (2001). "A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y intimidation, by the use of threat or coercion.

10

. . ." OCGA § 16-8-40 (a) (2). The "intimidation essential to robbery must either precede or be contemporaneous with the taking." *Johnson v. State*, 247 Ga. App. 157, 159 (1) (543 SE2d 439) (2000), overruled on other grounds, *Owens v. State*, 271 Ga. App. 365, 369 (3) (609 SE2d 670) (2005). And the Georgia Supreme Court has recognized that "immediate presence" and robbery convictions will be affirmed "even out of the physical presence of the victim if what was taken was under his control or his responsibility and if he was not too far distant." *Young v. State*, 290 Ga. 392, 396 (4) (721 SE2d 855) (2012), overruled on other grounds, *Nalls v. State*, 304 Ga. 168, 177 (3) (a) (815 SE2d 38) (2018). The trial court did not err by refusing to charge on attempt in this case as the evidence showed the crime of robbery by intimidation was completed when Penix or perhaps another inmate obtained possession of the key. See OCGA § 16-2-20 (b) (3), (4) (a person is a party to a crime if he "aids or abets in the commission of the crime" or intentionally "advises, encourages, hires, counsels, or procures another to commit the crime"); *Williams v. State*, 313 Ga. 325, 328 (1) (869 SE2d 389) (2022) (conviction as a party to the crime requires evidence of common intent and may be inferred from "presence, companionship, and conduct before, during, and after the offense").

4. Penix contends that the trial court erred by failing to grant him a continuance. The record shows that Penix was indicted on December 6, 2021, and the Oconee Judicial Circuit Public Defender's Office entered an appearance on his behalf on March 3, 2022. At that time, the case had already been scheduled for trial on April 4, 2022. On April 4, 2022, Penix's attorney asked the trial court for a continuance, arguing:

> I don't know how deep to go into the circumstances of the Public Defenders Office and how we are representing individuals. Our problem being that with the new court system, we have various and sundry different days in which we are to appear in court.

> We have assistants that are assigned to various counties, and I'll be honest, the scheduling of matters in each county appears to our office at least, to be without regard to conflicts or anything else. We have a very difficult time meeting with our clients. Mr. Penix has been housed outside of Pulaski County. The last place he has been is in Houston County, which is outside our circuit, which requires additional time to get to talk to Mr. Penix. Mr. Penix also has a murder case. . . . Our office is not involved in that, but it's my understanding that case has been pending for some close to five years, now. I don't know all the circumstances of why it has taken that long. Mr. Penix is somewhat upset that he has been ready, trying to get ready and trying to be heard on that murder indictment, but is unable to have that resolved. That is what he has a main concern about. He's concerned about these other

12

charges, as well, but he has been able to hire private counsel in the murder case.

. . .

Mr. Penix, in this particular case, one of my assistants talked with Mr. Penix earlier, regarding there has been a joint plea agreement or plea offer made, resolving all of his cases, including the murder case. Mr. Penix tells me that he was somewhat concerned that my office was even involved in the murder case, or even knew what the plea might be and they were all tied together. I tried to explain to Mr. Penix that, generally, even though I am not involved in one particular case, if he is involved in other cases, that would also involve the other case. I tried to explain that to him, he is still upset with us. He does not like the fact that we have not talked with him very much.

I will tell the Court, because of the trial schedule here, I took over the defense of Mr. Penix on Thursday — I've worked diligently since Thursday on the case, the law and the facts of the case. Mr. Penix has told me — we spoke on the early morning of Saturday. He told me he was able to hire private counsel and has talked to two different private attorneys that would be willing to . . . represent him, however, they would not be able to represent him [on] such short notice and would not be involved in the case unless there was a continuance granted.

I don't want to argue against my client. I am prepared with the case. . . . But we would ask the Court to grant a continuance, in this matter, and allow him to hire a private attorney. This case is not such a

13

long-pending case. He believes he can hire an attorney. His family has told me they were able to hire an attorney, and made arrangements for that with a continuance.

After hearing this argument, Penix addressed the court and explained that he spoke with a public defender on March 30, 2022, who

> tried to get me to commit to a plea for the murder charges . . . . My lawyer never authorized the Public Defender's Office to negotiate a plea dealing with the murder charges. Now they are allowing the DA to rush me to trial . . . in four to five months [on these charges], but the same DA's office has take[n] five years and still hasn't brought me to trial on the murder charges. In light of this, I feel like the Public Defender's Office has not acted in my best interest.

He also expressed concern about a different public defender trying to convince him on April 2 that they were ready to go to trial without providing him with a definition of the crime. According to Penix, he was "forced to believe that the whole Public Defender's Office is tainted and actively working [against him]." He asked for a "pro bono attorney, because I now have a conflict with the Public Defender's Office," based upon a complaint filed with the Georgia Bar Association.

After hearing from both Penix and his attorney, the trial court recited some procedural history regarding the scheduled trial of the murder case, explaining that

14

the murder case had been scheduled for trial two to three times and was continued in February 2022, at the request of Penix's retained counsel, due to "some delays at the crime lab for over a year." At that time and in the presence of Penix's retained counsel, the case at issue in this appeal was scheduled for trial on April 4, 2022, with the understanding that Penix would be represented by the public defender's office, not retained counsel. The trial court then stated that it "ha[d] heard nothing of a continuance" since the case was scheduled for trial and that "Penix can show nothing that he attempted to retain counsel, or anything of that nature. We are here. We have jurors coming in today to select a jury, and any motion to continue is hereby denied."

Having summarized the relevant facts regarding Penix's request for a continuance, we now turn to the applicable legal standard.

> Every person indicted for a crime has a most valuable and important constitutional right, which entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attorney and uses *reasonable diligence* to obtain his services. No person meeting these requirements should be deprived of his right to be represented by counsel chosen by himself, or forced to trial with the assistance only of counsel appointed for him by the court.

(Citation and punctuation omitted; emphasis in original.) *Davis v. State*, 301 Ga. 397, 401 (4) (801 SE2d 897) (2017). However, "[a] defendant may not use a request for

change of counsel as a dilatory tactic." (Citation and punctuation omitted.) *Davis v. State*, 295 Ga. 168, 169 (2) (758 SE2d 296) (2014). "Whether a particular defendant has exercised 'reasonable diligence' in procuring counsel is a factual question, and the grant or denial of a request for continuance on grounds of absence of retained counsel is a decision within the sound discretion of the trial judge, reversible only for an abuse of that discretion." (Citation and punctuation omitted.) *Davis*, 301 Ga. at 401-402 (4).

Here, we cannot say that the trial court abused its discretion in denying the request for a continuance. When Penix addressed the trial court in support of the requested continuance, he said nothing about his attempts to obtain retained counsel and complained about the case being tried before his murder case. Under these particular facts and circumstances, the trial court could have concluded that the continuance was being sought as a dilatory tactic so that the murder case could be tried first and that Penix had not actually sought to obtain retained counsel. We therefore affirm the trial court's denial of his motion for a continuance. See *In the Interest of A. B.*, 350 Ga. App. 158, 160-161 (2) (828 SE2d 394) (2019) (juvenile court did not abuse discretion in denying motion for continuance to hire retained counsel where no evidence was presented that counsel had already been retained);

*Calloway v. State*, 313 Ga. App. 708, 710-712 (1) (722 SE2d 422) (2012) (trial court did not err by denying continuance where counsel not already retained and timing of request for continuance on the first day of trial supported conclusion that request was being made for purposes of delay).

*Judgment affirmed. McFadden, P. J., and Markle, J., concur.*