In the Supreme Court of Georgia

Decided: November 23, 2015

S15A1248. HARPER v. THE STATE.

HINES, Presiding Justice.

Mark Anthony Harper appeals from his conviction and sentence for felony murder in connection with the death of Rajib Sarkar. For the reasons that follow, we affirm.[1]

In his sole enumeration of error, Harper contends that the evidence was insufficient to support his conviction.

> When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979). This Court does

---

[1]The crimes occurred on October 2, 2011. On February 27, 2014, a Gwinnett County grand jury indicted Harper for felony murder while in the commission of armed robbery, felony murder while in the commission of robbery, armed robbery, and robbery; Harper had been previously indicted in 2012. Harper was tried before a jury March 10-20, 2014, and found guilty of all charges. On March 20, 2014, Harper was sentenced to life in prison for felony murder while in the commission of armed robbery; the remaining charges either merged with that crime or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Harper filed a motion for new trial on April 14, 2014, which he amended on January 15, 2015; on February 20, 2015, the motion, as amended, was denied. Harper filed a notice of appeal on February 26, 2015, the appeal was docketed in this Court for the April 2015 term, and submitted for decision on the briefs.

not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence. [Cits.]

*Mickens v. State*, 277 Ga. 627, 627-628 (593 SE2d 350) (2004).

The evidence presented at trial showed that Sarkar managed a convenience store and gas station. His wife, Stephanie, also worked at the store, usually in the mornings. Harper worked at a car wash next to the store and he and Stephanie developed a romantic relationship. Each night, at midnight or later, Sarkar would leave the store with a bag containing the proceeds of the day, and drive to his apartment, where he and Stephanie would count the proceeds; at about noon the next day, Sarkar would deposit the proceeds in a bank on his way to the store. The proceeds were usually in the range of $2,000.00 to $4,000.00, and higher on weekends and the first of the month. Stephanie twice took Harper to the apartment she shared with Sarkar, and Harper asked questions of her about the amount of money Sarkar would have with him when he left the store and what time he would arrive home.

One of the State's witnesses at Harper's trial was James Clark, who worked at the car wash with Harper. He testified that Harper approached him

with a plan to rob Sarkar. Like Harper, Clark had seen Sarkar leave the store with the money bag. Harper told Clark that it should be Clark who personally robbed Sarkar because Harper was too well known to the victim, and that the robbery should take place in the parking lot of Sarkar's apartment complex. Harper told Clark that Sarkar was a small man and a pistol should not be needed, but Clark told Harper that he would be more comfortable carrying one; Harper said that Clark would not "have to do much to [Sarkar], just pistol-whip him maybe, and he'll give it up easy like that." Harper went to New York, but remained in contact with Clark. At 10:00 p.m. on October 1, 2011, a Saturday, Clark took a taxi to a location near Sarkar's apartment complex, walked to the parking lot of the apartment complex, and waited; he carried a .40 caliber pistol. By cell phone, Harper was in contact with both Clark and Stephanie, who was inside the apartment she shared with Sarkar. About 1:00 a.m. on October 2, 2011, Sarkar telephoned Stephanie and said that he was on his way home; Stephanie told Harper this, and Harper relayed the information to Clark. Clark hid under an automobile and when Sarkar arrived and exited his vehicle, Clark emerged from his hiding place and shouted to Sarkar to drop the money bag. Sarkar screamed, ran toward the breezeway where the entrance to his apartment

3

was located, and Clark shot him three times in the back; Clark then grabbed the money bag and fled, arranging for a taxi to drive him from the area. The bag contained approximately $6,000.00. The next day, at Harper's direction, Clark gave Harper's share of the proceeds to a person who met Clark at a set time and place; Harper told Clark not to contact him after that. Clark later arranged for a relative of his to dispose of the pistol. Clark also testified that he and Harper had intended that the robbery take place at an earlier date, but that it did not.[2]

After being shot, Sarkar was able to use his cell phone to call Stephanie, who was still inside their apartment, and told her that he had been shot; she emerged from the apartment and called 911. Sarkar died shortly thereafter from the gunshot wounds he received. Harper returned to Georgia and was seen wearing notably better clothing than he had worn before Sarkar was killed.

Evidence produced against Harper by the State included records of his cell phone communications and the testimony of two men who were incarcerated with him while he awaited trial, Sylvester Parker and Terence Cone. Parker testified that Harper told him he planned the robbery of a man who operated a

---

[2] Prior to testifying at Harper's trial, Clark pled guilty to the malice murder of Sarkar and associated crimes.

4

store but that he could not do it himself because of his relationship with the wife of the victim, so Harper got "some young boy" to do the crime, and that it was intended only to be a robbery; Harper also said that the "young boy" was not to contact him after the robbery. Cone testified that Harper told him that: he had developed the idea of an armed robbery of a man who operated a store; he enlisted James Clark to help him; he showed Clark the victim's residence; Harper thought it would be an easy robbery; the victim usually brought more money to his home on Friday and Saturday nights; Harper knew these things because he had a relationship with the victim's wife; and the robbery was to have taken place at an earlier date than it did, but that could not happen because Harper was unable to get the victim's wife on the telephone.

Harper was indicted and tried as a party to the crimes of robbery, armed robbery, felony murder while in the commission of robbery, and felony murder while in the commission of armed robbery; he was found guilty of all charges and sentenced for the crime of felony murder while in the commission of armed robbery. See footnote 1, supra.

> A party to a crime is one who intentionally aids or abets the commission of the crime, or intentionally advises, encourages, hires, counsels, or procures another to commit the crime. OCGA §

5

16-2-20 (b) (3) & (4). "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime." (Citation and punctuation omitted.) [Cit.]

*Conway v. State*, 281 Ga. 685, 687 (1) (642 SE2d 673) (2007). And, substantial evidence was produced to support the conclusion that Harper was a party to the crime of felony murder while in the commission of armed robbery.

Harper characterizes the evidence against him as circumstantial and asserts that it fails to exclude every other reasonable hypothesis save that of his guilt. See OCGA § 24-14-6. But, Clark's testimony regarding Harper's recruitment of him to be the active perpetrator of the armed robbery, and of Harper's efforts to facilitate Clark's role in the robbery, as well as the testimony regarding Harper's admissions to his fellow inmates, are examples of direct, not circumstantial, evidence of Harper's guilt. See *Evans v. State*, 288 Ga. 571, 575-576 (6) (707 SE2d 353) (2011); *Brown v. State*, 251 Ga. 598, 601 (fn. 3) (308 SE2d 182) (1983). Although Harper contends that the testimony of Clark and the two inmates was not reliable, direct evidence is not converted into circumstantial evidence by a witness's credibility or lack thereof, see *Lewis v. State*, 296 Ga. 259, 261 (2) (765 SE2d 922) (2014), and the weight and

reliability of such evidence is for the jury's resolution.  See *Hayes v. State*, 292

Ga. 506, 509 (739 SE2d 313) (2013).  The jury was properly instructed on the

law of parties to a crime, as well as on direct and circumstantial evidence, and

the evidence authorized the jury to find Harper guilty beyond a reasonable doubt

of the crime of felony murder while in the commission of armed robbery.

*Jackson*, supra.

Judgment affirmed.  All the Justices concur.