**FIFTH DIVISION**
**MERCIER, C. J.,**
**BARNES, P. J., and MCFADDEN, P. J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 15, 2024**

# In the Court of Appeals of Georgia

A24A0568. HALL v. THE STATE.

MERCIER, Chief Judge.

Following a jury trial, Vincent Ivory Hall appeals his convictions for aggravated assault, burglary, theft by taking, possession of a firearm during the commission of a felony, and battery, contending that the evidence was insufficient to support a number of his convictions and that the trial court erred by admitting certain evidence under the residual exception to the rule against hearsay.[1] For the reasons set forth below, we affirm.

---

[1] Hall was indicted for malice murder, two counts of felony murder, three counts of aggravated assault, burglary, theft by taking, two counts of possession of a firearm during the commission of a felony, and battery. The jury acquitted Hall of malice murder and deadlocked on the two counts of felony murder and one count of aggravated assault with a deadly weapon. Hall was found guilty and convicted of the remaining charges.

It is well settled that,

> [w]hen evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). [An appellate court] does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence.

*Harper v. State*, 298 Ga. 158, 158 (780 SE2d 308) (2015) (citations omitted).

Viewed in this light, the evidence presented at trial indicates that Hall had been in a romantic relationship with both Leandra Ashby and Skyla Hunt for several years, although Ashby did not know about Hall's intimate relationship with Hunt. On April 20, 2016, Ashby discovered an Instagram photo of Hunt and Hall together and decided to message Hunt. In the ensuing text conversation, Ashby learned of Hunt's relationship with Hall. Hunt also revealed to Ashby that, earlier that same day, Hall hit her in the head with a .45 caliber Glock handgun belonging to Hunt, put the gun against her head, and stated that he hoped she died.[2] After learning of Hall's relationship with Hunt, Ashby confronted Hall, broke up with him, and began repeatedly asking Hall to return her house key. Hall did not comply.

---

[2] Additional text messages from Hall to Hunt corroborated that the two had a fight and that Hall told Hunt that he hoped that she died.

After further conversations, Ashby and Hunt decided to meet in person, and they attended a party together on the night of April 23, 2016. While out, Ashby sent Hall a photo of herself and Hunt, and both women talked with Hall on the phone. Ashby asked Hall to return her house key, and Hunt requested the return of her .45 caliber Glock handgun, which Hall had taken. At 10:20 pm, Hall texted Hunt, "Come get your gun and tell [Ashby] to come get her keys," and around 11:30 PM, he texted Hunt, "[C]ome to me . . . now." In response, Hunt told Hall that she and Ashby would stop by his home following the party. At some point after midnight, the women traveled to Hall's home to retrieve Ashby's key and Hunt's gun, but Hall was not there. The women then decided to go back to Ashby's home, where Hunt had left her car.

Unbeknownst to the women, Hall had stolen someone else's car earlier that night and driven it to Ashby's house,[3] though he did not park in Ashby's driveway or carport, where he normally parked. Armed with Hunt's Glock, Hall entered Ashby's house, went into a storage closet, and waited. Before arriving home, Ashby told Hunt she was "scared" that Hall might show up at any moment because he still had her key.

---

[3] The jury found Hall guilty of theft by taking for this act, and Hall does not challenge this particular verdict on appeal.

As the women entered the house, Ashby heard her storage closet door open, and Hall suddenly emerged, pointing the Glock at the women and yelling, "So this is what y'all wanted[?]" As Hall approached Ashby with the Glock, she "flail[ed]" her arms and tried to get away from him. Hall then hit Ashby in the head with the gun, at which time Hunt intervened by pulling a .9 mm pistol from her purse and warning Hall not to touch Ashby.

Next, Hall snatched the .9 mm gun out of Hunt's hand, fought with her, and slammed her head against a wall. After a momentary break in the fighting, Ashby commanded both Hall and Hunt to leave her home, and they complied. Hunt, however, forgot her purse inside the home, and Ashby allowed her to re-enter. Hall eventually followed, and he and Hunt began to fight again. During the following altercation, Hall continued to hold both guns, and the .9 mm fired, fatally shooting Hunt in the chest. Hall fled, but subsequently turned himself into police.

While in custody and waiting for trial, Hall communicated with Ashby, though he attempted to conceal it.[4] In one letter to Ashby, Hall included a transcript of Ashby's statement to police immediately following the shooting and instructed her to

---

[4] For example, Hall addressed the letters to Ashby's address, but he addressed them as being from "Travis Nelson" to "Crystal Waters."

explain any conflict between her favorable testimony at trial and her prior police interview by saying she was "afraid and angry" when she talked with the police. And, at trial, Ashby did, in fact, take issue with many aspects of her statement to police immediately after the shooting by testifying that she was "traumatized" at the time.

Based on this evidence, the jury found Hall guilty of the aggravated assault of Ashby, burglary, theft by taking, possession of a firearm during the commission of a felony for each handgun, and the battery of Ashby.[5] The jury found Hall not guilty of the murder of Hunt, and it deadlocked on the charges of felony murder and the aggravated assault of Hunt. Following the denial of a motion for new trial, Hall initiated the present appeal.

1. (a) Hall argues that, based on Ashby's testimony at trial, the evidence was insufficient to support his conviction for aggravated assault with a deadly weapon upon Ashby.[6] He is incorrect.[7]

---

[5] Hall raises no sufficiency challenge to his convictions for the aggravated assault of Hunt (Count 6), the battery of Ashby (Count 11), and the theft by taking of a Jeep (Count 8), and we do not consider them.

[6] OCGA § 16-5-20 (a) (a person commits assault when he "[a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury"); OCGA § 16-5-21 (a) (2) (a person commits aggravated assault when he commits an

In Count 5, Hall was indicted for committing aggravated assault "by aiming a deadly weapon, to wit: a handgun at, toward, and in her direction, thereby placing . . . Ashby in reasonable apprehension of immediately receiving serious bodily injury[.]" And, in the light most favorable to the verdict, the evidence showed that Hall unexpectedly emerged from a storage closet pointing a handgun and yelling at Ashby and Hunt, thereby causing Ashby to flail her arms and attempt to get away. This evidence is sufficient to support Hall's conviction. See *Howard v. State*, 288 Ga. 741, 742 (1) (707 SE2d 80) (2011) ("Testimony that the victims ran from the gunfire is sufficient evidence that [they were placed] in reasonable apprehension of immediately receiving a violent injury."). Hall's reliance on Ashby's testimony at trial that was favorable to him does not change this result. Much of Ashby's testimony at trial directly contradicted her previous statement to police given immediately following the shooting, and the jury was authorized to credit Ashby's prior statement over her inconsistent testimony at trial. See *Horne v. State*, 333 Ga. App. 353, 357 (1) (b) (773

---

assault "[w]ith a deadly weapon") (2016).

[7] We note that, although Hall's brief contains cites to the record and transcripts, it does not properly cite to the volume and page of *the appellate record* as required by our Rules. See Court of Appeals Rule 25 (d) (2).

SE2d 467) (2015) ("The jury is the arbiter of credibility, and it was able to assess all of the evidence and determine whether the victim's recantation was credible.").

(b) Hall also contends that the evidence was insufficient to support his conviction for burglary.[8] Again, he is incorrect.

The indictment alleged that Hall committed burglary by entering Ashby's home "without authority and with the intent to commit . . . Aggravated Assault with a Deadly Weapon therein[.]" In the light most favorable to the verdict, the evidence shows that, after Ashby had broken up with Hall and had repeatedly asked for the return of her key, Hall let himself into Ashby's home without permission (which Ashby had been scared he might do), waited in a closet for Ashby and Hall to return, and angrily confronted the women with Hunt's Glock moments after the women entered the home. This evidence is sufficient to support the verdict. See *Hewatt v. State*, 216 Ga. App. 550, 551 (2) (455 SE2d 104) (1995) (finding that intent may be inferred from circumstantial evidence).

---

[8] See OCGA § 16-7-1 (B) ("A person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another[.]).

(c) Hall further maintains that the evidence was insufficient to support his two convictions for possession of a firearm during the commission of a felony (one count for each handgun).[9] We disagree.

---

[9] OCGA § 16-11-106 provides:

(b) Any person who shall have on or within arm's reach of his or her person a firearm or a knife having a blade of three or more inches in length during the commission of, or the attempt to commit:

(1) Any crime against or involving the person of another;

(2) The unlawful entry into a building or vehicle;

(3) A theft from a building or theft of a vehicle;

(4) Any crime involving the possession, manufacture, delivery, distribution, dispensing, administering, selling, or possession with intent to distribute any controlled substance or marijuana as provided in Code Section 16-13-30, any counterfeit substance as defined in Code Section 16-13-21, or any noncontrolled substance as provided in Code Section 16-13-30.1; or

(5) Any crime involving the trafficking of cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31,

and which crime is a felony, commits a felony and, upon conviction thereof, shall be punished by confinement for a period of five years, such sentence to run consecutively to any other sentence which the person has received.

In Count 9 of the indictment, Hall was charged with possession of a firearm during the commission of a felony because he "did unlawfully have on and within arm's reach of accused's person a [.]9 millimeter caliber handgun during the commission of at least one of the following felonies: Murder, Felony Murder, Aggravated Assault with a Deadly Weapon, and Burglary in the First Degree." In Count 10, he was indicted for possession of a firearm during the commission of a felony for possession of the .45 caliber Glock handgun in an identical manner. In considering both of these indicted charges for sufficiency, it is important to note that the jury's verdict gives no indication as to which predicate felony or felonies it considered when finding Hall guilty of each possession count. Therefore, sufficiency of any of the alleged underlying felonies might support the verdict.

With regard to both counts of possession of a firearm, Hall first contends that neither could be premised on the underlying felonies of aggravated assault with a deadly weapon of Ashby or burglary, reiterating his previous argument that the evidence was insufficient to support a conviction for either of these predicate crimes. As discussed directly above, Hall's insufficiency argument with regard to these predicate counts is misplaced. This, in turn, allows quick resolution of Hall's

sufficiency challenge to Count 10, as the evidence plainly indicates that Hall was in possession of the .45 caliber Glock handgun at the time that he committed both burglary and the aggravated assault of Ashby.

Consideration of Count 9, possession of the .9 mm handgun, is slightly more complicated, however, because Hall did not take possession of that weapon until after his confrontation with Ashby and Hunt was underway. Even if we assume without deciding that, based on the wording of the indictment, burglary and the aggravated assault of Ashby could not be predicate felonies because Hall did not have the .9 mm handgun until he snatched it from Hunt after she tried to defend Ashby, we must still consider the remaining predicate felonies. Those remaining predicates include Count 1, the murder of Hunt "by shooting her with a handgun;" Count 2, the felony murder of Hunt committed by shooting her during the commission of an aggravated assault against her with a deadly weapon; Count 3, the felony murder of Hunt committed by shooting her with a handgun during the commission of burglary; and Count 4, aggravated assault with a deadly weapon committed by "shooting [Hunt] with a handgun, the same being a deadly weapon[.]"

With regard to these possible predicates, the jury found Hall not guilty of murder, and it deadlocked on Counts 2, 3, and 4. Hunt argues that none of these counts may serve as a predicate for Count 9 because he was not ultimately convicted for any of them. That is not correct, as "[i]t is well-settled . . . that there is no prohibition against inconsistent verdicts. *Smith v. State*, 348 Ga. App. 643, 645 (1) (824 SE2d 382) (2019)." *State v. Small*, 369 Ga. App. 824, 827 n. 2 (892 SE2d 193) (2023). And, we have previously held that a jury's determination that a defendant is not guilty of malice murder and felony murder does not defeat a simultaneous, but inconsistent, finding that the defendant is guilty of aggravated assault and possession of a firearm during the commission of a felony committed against the same victim. See *Taylor v. State*, 327 Ga. App. 288, 289 (2) (758 SE2d 629) (2014). See also *Smith*, 280 Ga. at 340 (rejecting an argument that a felony murder conviction had to be reversed because it was inconsistent with an acquittal on the predicate offense of aggravated assault); *Coleman v. State*, 286 Ga. 291, 295 (4) (687 SE2d 427) (2009) (conviction for possession of a firearm during the commission of a felony allowed to stand despite acquittal for the underlying felony). In this case, nothing on the face of the appellate record elucidates the jury's reasoning for its verdict, and, as such, the precedent

regarding inconsistent verdicts described above applies. See *Turner*, 283 Ga. at 20-21 (2).

With this in mind, we must determine whether there is constitutionally sufficient evidence to support Hall's conviction for possession of the .9 mm handgun during *any one* of the potential felonies, even though the result might be considered to be an inconsistent verdict. With regard to the aggravated assault of Hunt with a deadly weapon, there is sufficient evidence. Count 4 of the indictment alleged that Hall committed aggravated assault "by shooting [Hunt] with a handgun, the same being a deadly weapon[.]" It is uncontroverted that Hall took the .9 mm handgun from Hunt after the confrontation began and that, while the .9 mm handgun was in Hall's possession and he was actively fighting with Hunt, the weapon was discharged, thereby fatally wounding Hall. As such, there was sufficient evidence to support a determination by the jury that Hall was guilty of possession of the .9 mm handgun during the commission of the felony of the aggravated assault committed by shooting Hunt. See *Render v. State*, 257 Ga. App. 477, 478-479 (1) (571 SE2d 493) (2002) (although defendant argued that shooting happened by accident during struggle with victim, evidence was sufficient to support conviction for aggravated assault).

Accordingly, Hall's contention that the evidence was insufficient to support his conviction for possession of the .9 mm handgun during the commission of a felony also fails. Id.

2. Hall contends that the trial court erred by admitting certain text messages exchanged between Ashby and Hunt under OCGA § 24-8-807 ("Rule 807"), the residual exception to the rule against hearsay.[10] We disagree.

Rule 807 provides:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that:
(1) The statement is offered as evidence of a material fact;
(2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
(3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.[11]

"Under Rule 807, a trial court's decision to admit hearsay evidence is reviewed for an abuse of its discretion." *Tanner v. State*, 301 Ga. 852, 856 (1) (804 SE2d 377)

---

[10] We note that, although he properly set forth a separate argument section for this contention, Hall mistakenly omitted the contention from his list of enumerated errors. Nonetheless, we exercise our discretion to consider Hall's argument.

[11] Hall does not contend on appeal that Hunt's statements were inadmissible under Rule 807 because they were "specifically covered" by another law.

(2017). An appellate court should be "particularly hesitant to overturn a trial court's admissibility ruling under the residual hearsay exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *Thompson v. State*, 302 Ga. 533, 544 (IV) (807 SE2d 899) (2017) (citation and punctuation omitted). As a general matter, a trial court does not abuse its discretion by admitting evidence when the requirements of OCGA § 24-8-807 (1)-(3) are met, and the trial court concludes that the statements in question have sufficient guarantees of trustworthiness "because of the circumstances under which they were originally made." *Rawls v. State*, 310 Ga. 209, 214 (3) (a) (850 SE2d 90) (2020) (citation and punctuation omitted). Factors to be considered with regard to the admissibility of these statements

> include a consideration of the trustworthiness of the original declarant, given the circumstances in which they were first made, and whether guarantees of trustworthiness exist that are equivalent in significance to the specific hearsay exceptions enumerated in Federal Rules of Evidence 803 and 804. Therefore, such guarantees must be equivalent to cross-examined former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history.

*State v. Holmes*, 304 Ga. 524, 529 (2) (a) (820 SE2d 26) (2018) (citation, punctuation and emphasis omitted). In simpler terms, "[w]hether there are exceptional guarantees

14

of trustworthiness is a determination that focuses on the declarant and the circumstances under which the declarant made the statement to the witness." *Miller v. State*, 303 Ga. 1, 5 (2) (810 SE2d 123) (2018) (emphasis omitted). Finally, "[a] trial court should consider the totality of the circumstances in determining whether to admit evidence pursuant to OCGA § 24-8-807." *Reyes v. State*, 309 Ga. 660, 668 (2) (b) (847 SE2d 194) (2020).

Here, the statements contained in the challenged texts provided information regarding the state of Hall's relationship with Hunt just prior to her death. This information was certainly evidence of a material fact, namely the aforementioned relationship, more probative on that point than any other evidence which could reasonably be procured since Hunt was deceased at the time of trial, and admission of the evidence, which gave context to the alleged crimes, served the purposes of the rules of evidence and the interests of justice. And, contrary to Hall's main contention on appeal, the trial court did not abuse its discretion by finding that the texts between Hunt and Ashby contained sufficient guarantees of trustworthiness. Specifically, the trial court found that the text messages were sufficiently trustworthy because the statements were "in [Hunt's] own words[,]" related to the "sensitive nature of

15

domestic abuse[,]" and shared under circumstances in which the two women were "discovering each other for the first time and discovering that they are both seeing the same gentleman[.]" Given this consideration of the unique circumstances in which Hunt and Ashby shared mutual stories of domestic abuse committed against them by the same man, we cannot say that the trial court abused its discretion when determining trustworthiness or the admissibility of the texts, as the trial court took into account both the unique characteristics of the declarant and the circumstances in which the statements were made. See *Ash v. State*, 312 Ga. 771, 786 (3) (b) (865 SE2d 150) (2021) (statements had sufficient guarantees of trustworthiness where the witness and declarant had a "close relationship" and "talked to each other daily"); *Jones v. State*, 311 Ga. 455, 460 (2) (b) (858 SE2d 462) (2021) (statements had sufficient guarantees of trustworthiness where "there was no evidence indicating that [the declarant] had a motive to fabricate her statements"); *Tanner v. State*, 301 Ga. 852, 856 (1) (804 SE2d 377) (2017) (statements had sufficient guarantees of trustworthiness where witness and declarant "had a close relationship," declarant had "no apparent reason to lie," and the "statements were consistent with other evidence").

*Judgment affirmed. Barnes, P.J., and McFadden, P.J., concur.*